## MARTIN & HILL CASH-CARRIER CO. v. MARTIN.

(Circuit Court of Appeals, First Circuit. May 9, 1895.)

### No. 97.

1. PATENTS—ESTOPPEL BY ASSIGNMENT.
　　An assignor of a patent is estopped, as against his assignee, from denying the validity thereof, but he may show the prior state of the art for the purpose of determining what was old and distinguishing what was new at the date of the patent, and to aid the court in the construction thereof. Ball & Socket Fastener Co. v. Ball Glove-Fastening Co., 7 C. C. A. 498, 58 Fed. 818, and Babcock v. Clarkson, 11 C. C. A. 351, 63 Fed. 607, followed.

2. SAME—CASH CARRIERS.
　　The Martin patent, No. 255,525, for an improvement in automatic cash-carrier systems for store service, is not a pioneer patent, but is one merely for details of construction. Held, therefore, that claim 1, which covers substantially a system consisting of an endless track, was not infringed by a cash-carrier system constructed under patent No. 399,150, which covered an apparatus consisting essentially of a double track, the carriers traveling in one direction on one track, and in the opposite direction on the other. 62 Fed. 272, affirmed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by the Martin & Hill Cash-Carrier Company against Joseph C. Martin for infringement of certain patents for automatic cash-carrier systems for store service. The circuit court found that there was no infringement, and dismissed the bill. 62 Fed. 272. Complainant appeals.

M. B. Philipp (Frank D. Allen, Edwin C. Gilman, and J. Steuart Rusk, on the brief), for appellant.

Frederick P. Fish and William K. Richardson, for appellee.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

COLT, Circuit Judge. This bill was originally brought for the infringement of three patents, Nos. 255,525, 276,441, and 284,456, granted to the defendant, Martin, for improvements in automatic cash-carrier systems for store service. These patents have been as-

signed to the plaintiff. By amendment to the bill, the two latter patents were stricken out, and the suit as it now stands is limited to the first claim of patent No. 255,525, which issued March 28, 1882. In answer to the charge of infringement, the defendant relies upon a subsequent patent, No. 399,150, issued to him March 5, 1889.

The first question which arises is how far the defendant is estopped in this action. In a suit for infringement, brought against the assignor of a patent by his assignee, the assignor is estopped from denying the validity of his patent. He cannot say that the patent has been anticipated by prior structures, or that it is void for want of novelty or utility. Babcock v. Clarkson, 11 C. C. A. 351, 63 Fed. 607; Id., 58 Fed. 581; Ball & Socket Fastener Co. v. Ball Glove-Fastening Co., 7 C. C. A. 498, 58 Fed. 818; Faulks v. Kamp, 3 Fed. 898; Onderdonk v. Fanning, 4 Fed. 148; Purifier Co. v. Guilder, 9 Fed. 155; Curran v. Burdsall, 20 Fed. 835; Underwood v. Warren, 21 Fed. 573; Parker v. McKee, 24 Fed. 808; Barrel Co. v. Laraway, 28 Fed. 141; Corbin Cabinet-Lock Co. v. Yale & Towne Manuf'g Co., 58 Fed. 563; Chambers v. Crichley, 33 Beav. 374; Hocking Co. v. Hocking, 4 Rep. Pat. Cas. 434, 438, 442; Walton v. Lavater, 29 Law J. C. P. 275.

But it is the settled rule with respect to the construction of patents that the prior state of the art is admissible in evidence "to show what was then old, to distinguish what was new, and to aid the court in the construction of a patent." Brown v. Piper, 91 U. S. 37, 41; Eachus v. Broomall, 115 U. S. 429, 6 Sup. Ct. 229; Grier v. Wilt, 120 U. S. 412, 7 Sup. Ct. 718. That this rule applies as between assignor and assignee has recently been held by this court in two carefully considered cases,—Ball & Socket Fastener Co. v. Ball Glove-Fastening Co., ubi supra, and Babcock v. Clarkson, ubi supra. In the latter case the court (adopting the language used in the former case) says:

"The record contains very much touching the state of the art and prior patents. From what we have already said, it is plain that they cannot be introduced here for the purpose of invalidating any of the patents covered by the contract, or any portion of any claim of any of such patents. Nevertheless, they, as well as the file wrappers and their contents, are appropriate to be considered for ascertaining the true construction of the various patents involved, and especially for determining whether, according to such construction, the improvements were of a primary or secondary character, and how far the combinations admit of the doctrine of equivalents."

The appellant also claims an estoppel different from that which we have considered, to the effect that, under some circumstances, a patentee assigning his patent after it has been apparently embodied in a machine is estopped, as against his assignee, from denying that the machine correctly represents the substance of the patent. But in the present case several patents were assigned. Only one is brought before us, and we do not know the scope of the others. Non constat the patents which have not been brought to our attention, and not the one in suit, furnish the basis of this alleged estoppel, if such an estoppel can be maintained. Therefore, we are not called on to consider this question, either as one of law or of fact.

Looking at what was old at that time, it is impossible for us to give the broad construction to the patent in suit which is contended for by the plaintiff. The patentee himself declares in the specification that the invention "relates to the details of the construction of automatically moving cash boxes and devices for moving such boxes from one place to another." At the date of this invention, conveying apparatus of various kinds were old. One variety of conveying apparatus then existing was especially intended for use in stores. The Brown patent, No. 165,473, dated July 13, 1875, shows a conveying apparatus which is described as "for transmission of goods, packages, money, etc., in general, but more particularly as an expedient and cheap method of transmitting packages, bills, and money in stores and salesrooms, from the salesmen to the cashier, and vice versa, without the aid of the now employed cash boys." The White patent, No. 229,783, dated July 6, 1880, also shows a conveying apparatus "whereby articles are carried from the counters of a store to a central desk, and each back to the counter from which it was sent." In our opinion, the patent in suit cannot be considered in any proper sense a pioneer patent which lies at the foundation of a new art, but it is a patent, as the specification declares, for improvements in the "details of the construction." As a store-service apparatus, it was crude and imperfect.

In the adaptation of the old cable-conveying apparatus to store service two problems presented themselves: First, it was necessary to provide tracks leading in all directions from a given point, such as the cashier's desk, to different stations at the various counters; second, it was essential to provide for the automatic delivery of different carriers at different points along a single line of track, so that one track connected the cashier's station with a number of different receiving stations, and the boxes sent along one track must each be delivered at the station to which it belonged. The first of these objects is only imperfectly met, and the second is wholly unprovided for, by the patent in suit.

The first claim of the patent is as follows:

"In an automatic cash-box system, the track, b, the endless cord, o, the cash box, v, and appliances, substantially as described, for attaching said box to said endless cord, and for automatically detaching said box therefrom, and a suitable motor to give a motion to said cord, all combined and operating substantially as set forth."

This claim is for the combination of several elements, the track, the endless cord, the cash box or carrier, the motor, and appliances for attaching and for automatically detaching the box from the endless cord. The prior state of the art, as exhibited in the various patents in this record, shows conclusively that the patentee is not entitled to claim broadly the combination of a track, carrier, endless cord, motor, and devices for attaching and automatically detaching carrier to the endless cord, but that his patent must be limited to substantially the means described and shown in the specification and drawings. The track is essentially an endless one, over the entire length of which the carrier must travel in passing from one station to the other, and thence back to the first station. The

cable is an endless one, extending throughout the entire length of the track. The motor is any suitable one to drive a cable. The carrier, which has a tube firmly attached to its under side through which the cord runs, is one adapted to travel along and never be disengaged from the track. The appliances for attaching and automatically detaching the box from the cord consist of a grip device connected with the box, composed of two arms or clamping jaws, one of which is stationary and the other movable. To the latter a spring is attached, and the gripping or ungripping takes place as the movable arm is pressed against or is released from the endless cord, by the operation of the spring. The cash box, at each of the two stations, runs into a trough provided with a hinged spring cover. This cover supports upon its lower side two converging cams or guards and two stops. By means of these cams and stops the box is stopped, and is unclutched from the endless cord; and, after the box has been stopped under this cover, it cannot be clutched to the cord again until the cover is lifted by an attendant. The act of lifting the cover not only removes the cams and stops out of the road of the box, but permits the grip to work so as to again clutch the cord. In the patented device, the cover, with its cams and stops, movable with respect to the track, is a neces sary feature.

While defendant's apparatus contains elements corresponding with those of the patent in suit, it is in substance and effect a different system. The track in this apparatus is essentially a double track, the carriers traveling in one direction on one track and in an opposite direction on the other track. The carrier must be capable of removal from the track and cord, for it cannot go back to its starting point by continuous movement in one direction. It must be wholly removed from one track, and placed upon an adjoining track, before it can be returned to the point from which it started. This apparatus has a gripping device, but the appliances for attaching and disconnecting the carrier from the cord are different from the patent in suit. It has no hinged cover with its converging cams and stops movable with relation to the track. The appliance for disconnecting the carrier from the cable is a cam or projection in fixed relation to the path of movement of the carrier along the track, which operates to release the grip; and the carrier continues to move on the track until it loses its momentum or is otherwise arrested. The carrier is then placed by the attendant upon the returning track. The system of the patent in suit is practically limited to a single carrier, because it must be remembered that it has only a single track, and that the carrier always runs in the same direction propelled by the endless cord. Now, if a second carrier were used, and the operator at one station should move away the stop, and thus start the carrier, and the operator at the other station should fail to start the carrier from that station at the proper time, the carriers would collide, and the ungripping devices would fail to properly operate. The defendant's apparatus is so constructed that an almost indefinite number of carriers may be used, and, while certain carriers will be automatically switched off from

the main track and disconnected from the cable at certain stations, others will be switched off at the other stations. Giving as full a scope to the invention covered by the plaintiff's patent as the state of the art will warrant, we think it clear that the defendant's apparatus does not infringe.

Decree of the circuit court affirmed.